## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ESPRIT HEALTH, LLC, | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| v. | : | No. 1:13-cv-01385-RGA |
| | : | |
| UNIVERSITY OF DELAWARE and | : | |
| STEVEN J. STANHOPE, | : | |
| Defendants. | : | |

## **MEMORANDUM OPINION**

Jeffrey S. Cianciulli, Esq., WEIR & PARTNERS LLP, Wilmington, DE
    Attorney for Plaintiff Esprit Health, LLC

William E. Manning, Esq., SAUL EWING LLP, Wilmington, DE; James D. Taylor, Esq., SAUL
EWING LLP, Wilmington, DE.
    Attorneys for Defendants University of Delaware and Steven J. Stanhope.

December ⎿9⏌, 2013

*Richard G. Andrews*
**ANDREWS, U.S. DISTRICT JUDGE:**

Esprit Health, LLC initiated this action against the University of Delaware and Dr. Steven J. Stanhope (collectively, the "Defendants") on August 2, 2013. (D.I. 1). On September 4, 2013, Esprit filed an amended complaint asserting six causes of action: breach of contract and implied duty of good faith and fair dealing against the University; fraud against the University and Dr. Stanhope; unjust enrichment against the University and Dr. Stanhope; negligent misrepresentation against the University and Dr. Stanhope; promissory estoppel against the University; and third party beneficiary against the University. (D.I. 6). The Defendants filed the instant motion to dismiss Counts Two, Three, and Four of the amended complaint. (D.I. 8). For the reasons that follow, the Court will deny the Defendants' Motion to Dismiss.

## I.    BACKGROUND

The amended complaint tells the following story.

In April 2010, the United States Department of Defense sought bids to provide it with a product that would provide better outcomes to wounded military service members by assembling research and expertise on physical trauma. (D.I. 6, ¶ 13). The University wanted to submit a bid for this Department of Defense project. (D.I. 6, ¶ 14). Dr. Stanhope was a professor at the University at the time. (D.I. 6, ¶ 4).

Realizing that the project would require a research IT infrastructure, Dr. Stanhope contacted Esprit's president, Frank Pierce, in July 2010. (D.I. 6, ¶ ¶ 15, 17). Dr. Stanhope hoped that Esprit would be able to provide the University with eSphere™ as the IT

2

infrastructure in its proposal to the Department of Defense.  (D.I. 6, ¶ 17).  eSphere™ is a system that uses meta-data to model research protocols.  (D.I. 6, ¶ 9).

Esprit expected that it would require considerable cost, time, and effort to integrate eSphere™ into the University's proposal.  (D.I. 6, ¶ 18).  Stanhope promised that the University would use eSphere™ if it was awarded the Department of Defense Contract and agreed to pay Esprit approximately $1,200,000.  (D.I. 6, ¶ ¶ 18, 19).

In reliance on the promises made by Stanhope, Esprit invested 200 days of man-labor to prepare the proposal by: providing descriptive materials to be included in the proposal, integrating eSphere™ into the product, developing necessary models, installing the software on a University computer, educating University employees about pre-implementation issues, assisting the University in certification programs, and making presentations to the Department of Defense.  (D.I. 6, ¶ ¶ 20, 21, 22).  Esprit estimated that such labor amounted to $600,000 in time and expenses.  (D.I. 6, ¶ 21).  To meet Dr. Stanhope's demands, Esprit forewent other opportunities and maintained a larger workforce than was otherwise necessary.  (D.I. 6, ¶ ¶ 23, 24).

The University ultimately submitted a proposal to the Department of Defense which specifically named Esprit as the provider of IT infrastructure.  (D.I. 6, ¶ 26).

Dr. Stanhope told Pierce that a formal written contract was not necessary.  (D.I. 6, ¶ 28).  Instead, Dr. Stanhope confirmed verbally to Pierce that Esprit had been awarded a contract with the University.  (D.I. 6, ¶ 28).  Dr. Stanhope made other promises of additional business between Esprit and the University.  (D.I. 6, ¶ 32).  On October 10, 2010, Dr.

3

Stanhope emailed that eSphere™ had been chosen for inclusion in the University's proposal. (D.I. 6, ¶ 29).

On March 1, 2011, Dr. Stanhope informed Pierce that the University's proposal, including Esprit's function, had been accepted by the Department of Defense. (D.I. 6, ¶ 33). On May 10, 2011, Dr. Stanhope presented eSphere™ as the IT infrastructure for the project to military representatives responsible for the project. (D.I. 6, ¶ 35). On September 30, 2011 the University was actually awarded the contract by the Department of Defense. (D.I. 6, ¶ 37).

Dr. Stanhope directed Esprit to continue implementation and customization of the infrastructure for incorporation into the final product. (D.I. 6, ¶ 37). Esprit trained University employees on how to use eSphere™, customized eSphere™ for known specifications, developed eSphere™ for implementation, and made presentations to University employees. (D.I. 6, ¶ ¶ 34, 38, 39, 40).

On December 9, 2011, Stanhope directed the final implementation of eSphere™ into the project. (D.I. 6, ¶ 42). In March 2012, both Stanhope and a senior officer for the military researchers confirmed that eSphere™ was the IT infrastructure to be used in the project. (D.I. 6, ¶ 43).

In July 2012, Dr. Stanhope told Pierce that the University would no longer use eSphere™ in the project. (D.I. 6, ¶ 44). Instead, the University decided to use a free IT infrastructure alternative. (D.I. 6, ¶ 44).

3

... 

## II.    LEGAL STANDARD

In evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the
court must accept the plaintiff's well-pleaded allegations as true and draw all reasonable
inferences in its favor. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The
complaint's "factual allegations must be enough to raise a right to relief above the
speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion
to dismiss under Rule 12(b)(6), a plaintiff must allege facts sufficient to "nudge its claims
across the line from conceivable to plausible." *Id.* at 570.

When determining whether dismissal is appropriate, the Court conducts a two-part
analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and
legal elements of a claim are separated. *Id.* The Court must accept all of the complaint's
well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second,
the Court must determine whether the facts alleged in the complaint are sufficient to show
that the plaintiff has a "plausible claim for relief." *Id.* at 211. A claim is facially plausible
when its factual content allows the Court to draw a reasonable inference that the defendant
is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.    DISCUSSION

Defendants do not challenge the sufficiency of the allegations to state the various
claims. Rather, they argue that the various claims are, essentially, mutually inconsistent,
and cannot all be pursued at the same time. In short, I do not believe this is the appropriate
time to decide the consequences of pleading alternative theories that under Delaware law,
if proven, cannot all be the basis of remedies. Thus, at the most basic level, while Plaintiff

4

claims breach of contract, it is not an undisputed fact that there was a contract. (The amended complaint makes it pretty clear that, in Plaintiff's view at least, there was no written contract.) Once Defendants have answered the amended complaint, the viability of the various theories will probably be clearer.

### A. Count Two (Fraud) and Count Four (Negligent Misrepresentation)

In Counts Two and Four of its amended complaint, Esprit alleges fraud and negligent misrepresentation, respectively. To establish a claim for fraud, a plaintiff must prove: "(1) defendant made a false representation; (2) with knowledge or belief of its falsity or with reckless disregard for the truth; (3) with an intent to induce the plaintiff into acting or refraining from acting; (4) plaintiff reasonably relied upon the misrepresentation; and (5) plaintiff was damaged as a result of the reliance." *Segovia v. Equities First Holdings, LLC*, 2008 WL 2251218, *21 (Del.Super. May 30, 2008). In its amended complaint, Esprit alleges that the University and Stanhope made false misrepresentations and omissions with knowledge of their falsity and with the intent of misleading Esprit into relying on them. (D.I. 6, ¶¶ 56, 57). Despite actual representations by Stanhope that Esprit would be the party to provide the IT infrastructure, the University chose another IT infrastructure provider for its Department of Defense contract. (D.I. 6, ¶ 55).

To establish a claim for negligent misrepresentation a plaintiff must prove: "(1) a false misrepresentation, usually of fact; (2) with the intent to induce the plaintiff to act or refrain from acting; (3) which causes justifiable reliance on the misrepresentation; and (4) damage to the plaintiff as a result of the reliance." *State Dept. of Transp. v. Figg Bridge Engineers, Inc.*, 2011 WL 5593163, *4 (Del. Super. Nov. 9, 2011). Esprit alleges in its

5

amended complaint that the University's and Dr. Stanhope's representations were false and misleading and were made negligently in a manner that would mislead Esprit into relying on the misrepresentations. (D.I. 6, ¶ 75). Esprit further alleges that the University and Stanhope owed a duty to Esprit to disclose that Esprit might not be used to provide the IT infrastructure despite the University's award of a contract that was based on a proposal containing Esprit technology. (D.I. 6, ¶ 78).

The Defendants counter that Esprit cannot allege fraud or negligent misrepresentation because the allegations of fraud and negligent misrepresentation are all substantially related to the Defendants' alleged failed performance under the oral agreement. (D.I. 8). Notably, the Defendants have cited to only one case in Delaware standing for the proposition that these tort claims cannot be alleged alongside breach of contract claims. *See Cornell Glasgow, LLC v. La Grange Props., LLC*, 2012 WL 2106945, *8 (Del. Super. June 6, 2012). *Cornell* did not, however, state an absolute rule: "The question whether . . . a tort claim can survive along side a breach of contract claim arising from the same operative facts can, in many instances, be decided on a motion testing the viability of a plaintiff's complaint . . . . This is such a case." *Id.* I do not, however, think the present case is "such a case."

In *Cornell*, the plaintiff asserted an express written agreement governing the parties' conduct. In this case, the plaintiff asserts an oral agreement which, at best, appears to leave unstated a significant number of items that I would expect to see in a written contract. I cannot predict whether Defendants will admit to the existence of any agreement at all. Defendants may admit an agreement but claim a breach by Esprit. Esprit is entitled

6

to plead in the alternative. Federal Rule of Civil Procedure 8(e)(2) provides that a party may state as many separate claims as the party has, regardless of consistency. While the Defendants ask this court to use Esprit's breach of contract claim to preclude other tort claims, a court may not construe a plaintiff's "claim as an admission against another alternative or inconsistent claim." *See Independent Enterprises, Inc. v. Pittsburgh Water and Sewer Authority*, 103 F.3d 1165, 1175 (3d Cir. 1997) (citation omitted). Defendants' motion to dismiss Esprit's fraud and negligent misrepresentation claims will therefore be denied.

### B. Count Three – Unjust Enrichment

To establish a claim for unjust enrichment, a plaintiff must prove: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). In its amended complaint, Esprit alleges that the University was enriched when it was awarded the Department of Defense project at least in part due to the incorporation of Esprit's technology. (D.I. 6, ¶ 64). Esprit further asserts that it forewent other opportunities and spent 200-man hours to develop its IT infrastructure for inclusion in the project proposal. (D.I. 6, ¶ 22). Esprit claims that due to its development of the IT infrastructure, the University and Dr. Stanhope will benefit from the profits that the University will earn as a result of the awarded contract. (D.I. 6, ¶ 67).

The Defendants counter that Esprit cannot allege a claim for unjust enrichment because an unjust enrichment claim cannot be maintained alongside a contract claim. (D.I.

7

8). The Defendants cite to one case. In *Kuroda*, it was clear from the face of the complaint that the relationship between the plaintiffs and defendants was governed by an express contract. *Kuroda v. SPJS Hldgs., LLC*, 971 A.2d 872, 891 (Del. Ch. 2009). The Court stated that, "if there is a contract that is the measure of [the plaintiff's] right, there can be no recovery under an unjust enrichment theory independent of it." *Id.* (citing *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del. 1979)). I accept that as an accurate statement of Delaware law.

This case, however, is distinguishable from *Kuroda*. For essentially the same reasons as stated in relation to the fraud and negligent misrepresentation claims, this is not the right time to force Plaintiff to choose amongst its theories. Defendants' motion to dismiss Count Three will therefore also be denied.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' Motion to Dismiss the Amended Complaint as to Counts Two, Three, and Four is denied. A separate Order, consistent with this Memorandum Opinion, will be entered.