IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ESPRIT HEALTH, LLC,

          Plaintiff;

v.

UNIVERSITY OF DELAWARE
and
STEVEN J. STANHOPE,

          Defendants.

Civil Action No. 13-1385-RGA

MEMORANDUM OPINION

Jeffrey S. Cianciulli, Esq., WEIR & PARTNERS LLP, Wilmington, DE.

Attorney for Plaintiff.

William E. Manning, Esq., James Taylor, Jr., Esq., Gerard M. Clodomir, Esq., SAUL EWING LLP, Wilmington, DE.

Attorneys for Defendants.

August 7, 2015

*signature* 
**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court is Defendants' Motion for Summary Judgment (D.I. 73) on all counts in Plaintiff's Amended Complaint. Plaintiff's six-count Complaint asserts claims for breach of contract, fraud, unjust enrichment, negligent misrepresentation, promissory estoppel, and "third-party beneficiary." (D.I. 6). The motion is fully briefed. (D.I 74, 84, 87, 91). For the reasons that follow, the Court will grant Defendants' motion for summary judgment as to breach of contract and "third-party beneficiary," but will deny Defendants' motion for summary judgment as to the rest of the claims.

## I. BACKGROUND

Plaintiff Esprit Health, LLC ("Esprit") is a limited liability company organized and existing under the laws of the State of Illinois. (D.I. 6 at 1). Frank Pierce, a citizen of Michigan, is the president of Esprit. (D.I. 6 at 1, 4). Defendant University of Delaware is an entity organized and existing under the laws of the State of Delaware. (D.I. 6 at 1). Defendant Steven J. Stanhope is employed as a professor by the University. (*Id.*).

In April 2010, the U.S. Department of Defense ("DoD") issued a Program Announcement seeking bids and proposals focused on improving the rehabilitation of combat-related neuro-musculoskeletal injuries. (D.I. 74 at 2). Intending to submit a bid, the University, by and through Stanhope, contacted Esprit, by and through its president Pierce, in July 2010 in an effort to identify a research IT infrastructure to meet the DoD requirements. (D.I. 6 at 4). In October 2010, the University's research enterprise working on the bid, called the BADER Consortium, led by Stanhope, submitted a proposal to DoD in which eSphere – developed and owned by Esprit – was identified as a proposed solution to the DoD data management requirements. (D.I. 74 at 3).

The budget included in the proposal was $1,200,000, which represented a substantial reduction from the original budget submitted by Esprit to the University. (D.I. 6 at 6).

The BADER Proposal was approved for funding in February 2011. (D.I. 74 at 6). On or about May 10, 2011, Pierce attended a pre-Award meeting and presented eSphere to military representatives responsible for the entire project. (D.I. 6 at 7). On May 13, 2011, Stanhope forwarded an email to Pierce entitled "Alternative to eSphere." (D.I. 74 at 7). In response, Esprit's Vice President, Weddle, sent Stanhope "summary points about advantages of eSphere for Bader vis-à-vis RedCap" and information titled "eSphere and REDCAP Side-by-Side Comparison." (*Id.* at 7, 8).

On September 30, 2011, DoD awarded the contract to the University. (D.I. 6 at 7). On or around May 22, 2012, Dr. Milbourne, a BADER member, discovered a free alternative to eSphere and informed Stanhope. (*Id.* at 12, 13). In or around July 2012, Stanhope informed Pierce that the University decided to use the free IT infrastructure alternative to eSphere. (D.I. 6 at 8).

## II. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the

3

moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . " Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

### III. DISCUSSION

#### A. Count I – Breach of Contract

Esprit alleges that it entered into an agreement with the University, whereby "Esprit accepted the University's offer to provide IT infrastructure services and incorporated its software into the proposal to the Department of Defense and after the award to the University." (D.I. 6 at

4

9). Esprit alleges the University breached its contractual duties, including the implied duty of good faith and fair dealing by, *inter alia*, refusing to use eSphere and failing to compensate Esprit in accordance with the terms agreed upon by the parties. (*Id.*). The University argues that there is no written contract and oral agreements are unenforceable without a writing. (D.I. 74 at 14).

### 1. Statute of Frauds

The Court has diversity jurisdiction over this case. Thus, Delaware law applies. According to 6 Del. Code § 2714(a), "[n]o action shall be brought to charge any person ... upon any agreement that is not to be performed within the space of 1 year from the making thereof, or to charge any person to answer for the debt, default, or miscarriage, of another, in any sum of the value of $25 and upwards, unless the contract is reduced to writing ..." In the pending motion, the University asserts that the contract alleged by Esprit is a five-year contract to provide a license and services for $1.2 Million. (D.I. 74 at 14).[1] Esprit, in turn, claims that the parties' agreement has two components, one of which is a license component that was complete immediately upon the Award from DoD and was performed within one year. (D.I. 84 at 18). The University then counter-argues that (i) Esprit's price quote is for five year license; (ii) the University never received a copy of the software; and (iii) Esprit was never paid. (D.I. 87 at 9). Since Esprit fails to demonstrate that the license component was performed within one year, or that it could have been performed within one year, the Court concludes that the agreement between the parties alleged by Esprit is one that requires more than one year for performance and is subject to the Statute of Frauds. *See Quailes v. Newton*, 2013 WL 4149264, at *2 (Del. Super. 2013).

#### a. Partial performance exception

---

1 The proposal to DoD identifies $695,000 for license fees, $104,250 for technical support, and $50,000 for "Author Training" for Year 1; $104,250 annually for technical support from Year 2-5. The total is $1,266,250. (D.I. 85-10 at 82 [Detailed Budget and Justification]).

5

Esprit argues that it performed a substantial amount of work demanded by Defendants and incurred a number of expenses. (D.I. 84 at 18). Consequently, Esprit argues, its partial performance renders the Statute of Frauds inapplicable. (*Id.*) (quoting *Chaplake Holdings, Ltd. v. Chrysler Corp.*, 1999 WL 167834, at *22 (Del. Super. Jan. 13, 1999).). The partial performance exception does not apply to the situation at hand: "Delaware law is clear that the part performance doctrine does not apply to oral contracts not to be performed within one-year." *Aurigemma v. New Castle Care LLC*, 2006 WL 2441978, at *3 (Del. Super. Aug. 22, 2006); *Olson v. Halvorsen*, 982 A.2d 286, 295 (Del. Ch. 2008), *aff'd*, 986 A.2d 1150 (Del. 2009). Since Esprit's alleged agreement could not be performed within one year, its partial performance does not create an exception to the Statute of Frauds.

### b. Written memorialization of the parties' agreement

Esprit refers to the Proposal that the BADER Consortium submitted to the DoD as the embodiment of material terms of the agreement between Esprit and the University, such as the identities of the parties, the price, the term, and a description of the goods and services. (D.I. 84 at 4). In Delaware, multiple writings can satisfy the Statute of Frauds if they "(a) reasonably identify the subject matter of the contract, (b) indicate that a contract has been made between parties or an offer extended by the signing party and (c) state with reasonable certainty the essential terms of the unperformed promises in the contract." *Olson v. Halvorsen*, 982 A.2d 286, 293 (internal quotation omitted). However, "at least one of the writings must be signed by the party against whom the documents are to be enforced." *Id.* In the pending case, the Proposal does not have a signature of the University or any of its representatives.[2] As a result, the proposal

---

2 The proposal is at D.I. 85-7 through D.I. 85-10. There is no signature by anyone from the University. (*See, e.g.,* D.I. 85-8 at 6).

6

does not serve as the written memorialization of Esprit's agreement with the University and cannot satisfy the Statute of Frauds.

### 2. Court's function to determine the existence of a contract

Esprit further claims that the existence of a contract must be decided by the jury. (D.I. 84 at 19). The Court disagrees. The jury is to decide the existence of a contract "when other facts and circumstances germane to the issue are to be considered in addition to any documentary evidence," *Christiana Marine Serv. Corp. v. Texaco Fuel and Marine Mktg.*, 2002 WL 1335360, at *4 (Del. Super. June 13, 2002), or when the issue is the "interpretation and construction of an oral contract." *Ford v. State Bd. of Educ. of State*, 1995 WL 411361, at *9 (Del. Super. June 9, 1995). In this case, the alleged contract is subject to the Statute of Frauds. Consequently, any oral agreement is invalid. In *Universal Products Co. v. Emerson*, the Supreme Court of Delaware held that "it is the Court's duty to determine whether a contract has been created, when the documentary evidence's authenticity is not challenged." 179 A. 387, 393 (Del. 1935). Since the authenticity of the documentary evidence is not challenged in this case, the Court, not the jury, has the duty to determine the existence of a contract. Even if it were not the Court's duty, as a matter of law, a jury could not find the existence of a contract based on the evidence in the summary judgment record.

Accordingly, the Court will grant Defendants' motion for summary judgment as to Count I for breach of contract.

### B. Count II – Fraud

A claim for fraudulent misrepresentation requires: (1) a false representation (usually one of fact); (2) that defendant knew or believed that representation was false; (3) that the false representation was intended to induce the plaintiff to act or refrain from acting; (4) that the

7

plaintiff's action or inaction was taken in justifiable reliance upon the representation; and (5) plaintiff was damaged by such reliance. *Carrow v. Arnold*, 2006 WL 328582, at *8 (Del. Ch. Oct. 31, 2006), *aff'd*, 933 A.2d 1249 (Del. 2007).

### 1. Justifiable reliance – direct contradictory written evidence

In the pending case, Defendants argue that the element of justifiable reliance is not the subject of material dispute in light of the written documents that contradict the alleged oral representation. (D.I. 87 at 12). This Court has previously acknowledged the rule that justifiable reliance on oral representations cannot be established when oral representations are "expressly contradicted by the parties' written agreement." *J.C. Trading Ltd. v. Wal-Mart Stores, Inc.*, 947 F.Supp.2d 449, 459 (D. Del. 2013) (internal quotation omitted). Although there is no written agreement in this case, contradictory contemporaneous written evidence, if it were to exist, would have given Esprit the opportunity to discover the misrepresentation and consequently would have rendered the reliance unreasonable. *See Carrow*, 2006 WL 3289582, at *8.

#### a. Pre-Proposal phase

Defendants argue that Esprit's reliance on the oral promise made by Stanhope that the University agreed to use eSphere in the event it received an award from DoD is not justifiable in light of contemporaneous written evidence. (D.I. 87 at 12). Defendants particularly point to emails exchanged in the spring of 2011. (*Id.*). Esprit, in turn, points out that the emails relied upon by Defendants were mostly sent after the Proposal was submitted in late-October 2010, when Esprit was already induced to agree that eSphere be used in the Proposal. (D.I. 84 at 22). As to the email exchanges on October 3, 2010 that Defendants allege to be suggesting eSphere only as the best option at the time being, but that a discovery phase would be needed for finding out better options, Esprit provides a reasonable interpretation of the emails that better options as to

8

installation, not software, would need to be developed during the first 12 months after the Award. (D.I. 84 at 6). Consequently, there are genuine issues of material fact as to the existence of contemporaneous written evidence that is directly contradictory to the oral promises made by Stanhope, which would render Esprit's pre-Proposal reliance on Stanhope's oral promise unreasonable.

### b. Post-Proposal phase

Defendants also argue that any post-Proposal efforts rendered by Esprit were solely promotional, in light of the email communications indicating that BADER's use of eSphere was not guaranteed. (D.I. 74 at 17). First, Defendants argue that, after the Proposal was submitted and before the Award was issued, Esprit was informed that BADER was considering an alternative called REDCap and responded with, *inter alia*, additional slides titled "eSphere and REDCAP Side-by-Side Comparison." (D.I. 74 at 7, 8). Second, according to Defendants, upon the disbursement of the Award, due to the concerns about eSphere's installation cost, Esprit was given opportunities to make "commercial-like" presentations to the Military Treatment Facilities (MTFs) on February 29, 2012, as REDCap and others had done. (D.I. 74 at 9).

As to the pre-Award consideration of alternatives, Esprit argues that it was not concerned about BADER's vetting of REDCap, because (1) Stanhope told Pierce that the vetting was to placate his team members, and (2) REDCap did not meet many of the criteria in the DoD Announcement. (D.I. 84 at 10). Indeed, Stanhope's email to Pierce on August 18, 2011[3] does not directly contradict Esprit's belief that Stanhope was placating the team members by vetting REDCap. Nor does the written evidence contradict the alleged oral promise made by Stanhope,

---

3 August 18, 2011 email from Stanhope to Pierce. ("If I order them to select eSphere, my team will lose important momentum early on. If DoD orders me to use Redcàp, I will have to swallow a big pill.") (D.I. 75-5, Ex. 21).

9

on behalf of the University, that so long as the University received the award, it was committed to using eSphere on the terms agreed to and included in the Proposal. (D.I. 85-2). The fact that no decision would be made on the software before the Proposal was approved by DoD[4] does not contradict the statement that once the Award (which presents eSphere as the solution) was approved, BADER was bound to use eSphere.

As to the post-Award efforts made by Esprit, such as drafting job descriptions and presenting eSphere to members of BADER and the MTFs (D.I. 84 at 11), Esprit believed that it was not for the purpose of marketing, but to demonstrate BADER's progress towards implementation of eSphere. (D.I. 84 at 12). Evidence provided by, and depositions taken from, BADER team members demonstrated that Esprit's belief was not unreasonable. First, Suzanne Milbourne, the current manager of BADER's Clinical Research Core, admitted that Esprit's presentations to the MTFs were not "marketing." (D.I. 86-7 at 85, ¶¶ 11-13). Second, Davis, another BADER member, warned Stanhope that "we need to be careful not to assume we are implementing." (D.I. 75-6 at 14 [e-mail dated Feb. 18, 2012]). Therefore, it cannot be said that it is materially undisputed that Esprit's post-Proposal efforts could only be justified as promotional in light of the written communications between the parties.

### 2. Justifiable reliance – Other factual evidence

Defendants argue that as a sophisticated vendor to government agencies and research projects, Esprit could not have justifiably believed that Stanhope "would or could bind the University to a $1.2 million contract without a formal process and with no meaningful due diligence." (D.I. 74 at 17). However, the case that Defendants rely on is a trial stage analysis on

---

4 Aug. 17, 2011 email from Stanhope to Pierce. ("In addition, we are still approximately 4 weeks from having the grant awarded and much further from making any decisions regarding the software.") (D.I. 75-4, Ex. 19).

10

the justifiable reliance issue. *See Tracinda Corp. v. DaimlerChrysler*, 364 F. Supp. 2d 362, 401 (D. Del. 2005) (holding that for a sophisticated party, "the complexity and magnitude of this transaction... weighs in favor of finding a lack of reasonable reliance on any oral representation."). In the summary judgment phase of the same case, the Court refused to rule on the reasonableness of reliance on oral statements due to genuine issues of material fact concerning the reasonableness of reliance. *See In Re DaimlerChrysler AG Securities Litigation*, 294 F.Supp.2d 616, 621 (D. Del. 2003).

In the pending case, it cannot be said that there is a lack of a genuine issue of material fact concerning the reasonableness of Esprit's reliance on Stanhope's oral representations in the summer of 2010. The following factors could influence the factual determination of reasonable reliance. First, although Esprit is a company with experience in research projects, Pierce claims to be the sole member of Esprit (D.I. 6 at 1), raising a question regarding the assumption that Esprit is a sophisticated party. Second, Stanhope and Pierce met in 2003 and Stanhope became a client of Esprit and a user of eSphere throughout the remainder of his time at the National Institutes of Health. (D.I. 85-2 at 1-2); *see In Re DaimlerChrysler AG Securities Litigation*, 294 F.Supp.2d at 621 (acknowledging that for purposes of Rule 10b-5 claims, the existence of a longstanding business or personal relationship is one of the factors determining whether plaintiff's reliance is reasonable); *see also Wilmington Trust Co. v. Aetna Cas. and Sur. Co.*, 690 A.2d 914, 916 (Del. 1996) (holding that the question of whether a plaintiff's reliance on defendant's misrepresentation was reasonable was a question for the jury). Thus, whether Esprit justifiably relied on Stanhope's oral representation involves genuine issues of material fact. Accordingly, the Court will not grant the Defendant's motion for summary judgment as to Count II.

**C. Count III – Unjust Enrichment**

11

A claim for unjust enrichment requires: (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) the absence of justification; and (5) the absence of a remedy provided by the law. *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). Here, Esprit's unjust enrichment claims consist of two parts – pre-Proposal benefit and post-Proposal benefit. For the pre-Proposal benefit, Esprit argues that it conferred benefits upon Defendants by agreeing to be included in the Proposal and Esprit's inclusion was one of the reasons that the University secured the Award, which was worth $19.5 million. (D.I. 84 at 23). Esprit further argues that, after the grant of the Award, Defendants continued to receive benefit from Esprit's assistance in performing its contractual obligation to the DoD. (*Id.*). Esprit claims that before and after the award, Esprit incurred not less than 200 man-days of labor, at the standard rate of $3,000 per day, totaling no less than $600,000 in time and expenses. (D.I. 6 at 5). On the pre-Proposal benefit, Defendants counter that there is no detriment – the information in the Proposal was already in Stanhope's possession and Esprit's effort in preparing materials that were not even used was minimal. (D.I. 87 at 14). Defendants also argue that Esprit's post-Proposal efforts were promotional in nature and cannot be a detriment. (D.I. 87 at 15). Esprit, in turn, alleges and provided evidence suggesting that its post-proposal effort was not marketing. (D.I. 84 at 11).

Based on the evidence provided by both sides, the Court concludes that there are genuine issues of material fact as to: (1) whether Esprit has suffered an impoverishment before the Proposal was submitted; (2) whether Esprit's post-Proposal work could be justified as purely promotional. Therefore, the Court will not grant Defendants' motion for summary judgment as to Count III for unjust enrichment.

### D. Count IV – Negligent Misrepresentation

12

A claim for negligent misrepresentation requires: (1) the existence of a pecuniary duty to provide accurate information; (2) the supplying of false information; (2) that the defendant failed to exercise reasonable care in obtaining or communicating the information; and (4) plaintiff suffered a pecuniary loss caused by reliance upon the false information. *Kuhn Constr. Co. v. Ocean & Coastal Consultant, Inc.*, 844 F.Supp.2d 519, 525 (D. Del. 2012).

As with Esprit's fraud claim, negligent misrepresentation requires the element of justifiable reliance. *Atwell v. RHIS, Inc.*, 2006 WL 2686532 (Del. Super. Aug. 18, 2006). For the same reasons given in the previous discussion, there are genuine issues of material fact as to justifiable reliance. Accordingly, the Court will not grant Defendants' motion for summary judgment as to Count IV.

### E. Count V – Promissory Estoppel

Promissory estoppel "is an equitable remedy designed to enforce a contract in the interest of justice where some contract formation problem would otherwise prevent enforcement." *Weiss v. Northwest Broad., Inc.*, 140 F.Supp.2d 336, 344-45 (D. Del. 2001) (internal quotations and citation omitted). A promissory estoppel claim requires "that defendant made a promise with intent to induce action or forbearance, that plaintiff actually relied on the promise, and that he suffered injury as a result." *See VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 87 (Del. 1998).

Defendants argue that Esprit's promissory estoppel claim fails because it cannot show reasonable reliance. For the same reasons given in the previous discussion, there are genuine issues of material fact as to justifiable reliance. Accordingly, the Court will not grant Defendants' motion for summary judgment as to Count V.[5]

---

5 Plaintiff's promissory estoppel claim seems to set forth its $1,800,000 "damages theory," which is "unpaid labor, materials [of] not less than $600,000.00" and "unrealized value of the contract

13

**F. Count VI – Third Party Beneficiary**

To prevail on a third party beneficiary theory, a plaintiff must show, among other things, an intent between the contracting parties to benefit a third party through the contract. *Phifer v. Sevenson Envtl. Servs. Inc.*, 2012 WL 868692, at *9 (D. Del. Mar. 14, 2012); *Comrie v. Enterasys Networks, Inc.*, 2004 WL 293337 (Del. Ch. Feb. 17, 2014). Although eSphere is included in the University's Proposal to the DoD, Defendants provide evidence that DoD confirmed in writing that the University could choose another software after the Award. (D.I. 75-5 at 38 [e-mail dated Feb. 1, 2012]). Esprit fails to provide any evidence of DoD's or BADER's intent that the Award was to benefit Esprit. Thus, there is no genuine issue of material fact as to intent to benefit a third party through the contract.

The Court will grant Defendants' motion for summary judgment as to Count VI.

**IV. CONCLUSION**

For the reasons set forth above, the Court will grant Defendants' motion for summary judgment on the breach of contract and third party beneficiary claims, and deny Defendants' motion for summary judgment on the fraud, unjust enrichment, negligent misrepresentation, and promissory estoppel claims. A separate order, consistent with this Memorandum Opinion, will be entered.

---

[of] approximately $1,200,000.00." (D.I. 6 at 15). On Plaintiff's best day, this seems like double-counting.